IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REUVEN RASOOLY,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; CONTRA COSTA COUNTY; DEPARTMENT OF CHILD SUPPORT SERVICES; G. BOYD TARIN, individually; and MELINDA R. SELF, individually.<br><br>    Defendants. | Case No.: 14-cv-04521-JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 8, 15 |

    Plaintiff Reuven Rasooly ("Rasooly") contends that the State of California, Contra Costa County, the Department of Child Support Services ("DCSS"), G. Boyd Tarin, and Melinda R. Self (collectively, "Defendants") deprived him of his right to due process while enforcing a child support order to his ex-wife. Now pending before the Court are two motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. Nos. 8, 15.) The State of California and DCSS (collectively referred to as "the State") seek to dismiss Rasooly's claims on grounds of sovereign immunity and the *Rooker-Feldman* doctrine. (Dkt. No. 8.) Contra Costa County and individual defendants G. Boyd Tarin and Melinda R. Self (collectively referred to as "the

County") seek to dismiss Rasooly's claims on grounds of the *Rooker-Feldman* doctrine and res judicata. (Dkt. No. 15.) Alternatively, the County requests that the Court abstain from hearing Rasooly's claims under the *Pullman* abstention doctrine. (Dkt. No. 15.) After carefully considering the arguments and briefing submitted, the Court GRANTS the State's motion to dismiss with prejudice and GRANTS the County's motion to dismiss with leave to amend as to Defendant Self only.

## FACTUAL & PROCEDURAL BACKGROUND

The following is a summary of Rasooly's allegations against the State and the County regarding child support payments to his ex-wife.[1]

### I. Israeli Custody and Child Support Litigation

In 1998, while Rasooly and his ex-wife were engaged in custody proceedings in Baltimore, Maryland, Rasooly's ex-wife took their children to Israel. (First Amended Complaint ("FAC"), Dkt. No. 5 ¶ 16.) The Jerusalem Family Court subsequently held that her actions constituted abduction under Hague Convention Law. (Dkt. No. 5 ¶ 17; Dkt. No. 5-2 at 27.) In a separate matter, a court in Israel ordered Rasooly to pay child support to his ex-wife. (Dkt. No. 9-1 at 8 (Rasooly's state court complaint).)

### II. Initial State Court Action Brought by County

Although the State and the County knew of the Jerusalem Family Court's finding on the abduction of his children, they still brought suit against him in Contra Costa County Superior Court

---

[1] California has one central "state agency for child support enforcement" per California Family Code Section 17303(a). *Govaerts v. Santa Clara County Dept. of Child Support Services*, No. C-08-00125, 2009 WL 890881 at *2 (N.D. Cal. Mar. 31, 2009). However, California also requires that each county have a local child support agency that answers to the state agency and is responsible for administering the state agency's plan. Cal. Fam. Code § 17304; *see also Govaerts*, 2012 WL 890881 at *2. "Though mandated by the state, the local child support agency's staff are county employees." Cal. Fam. Code §17304(f); *see also Govaerts*, 2012 WL 890881 at *3. Each county agency, or local child support agency, is a subsidiary of its county. *Govaerts*, 2012 WL 890881 at *4. Under California law, a "subsidiary" of a public entity may not be sued independently from its parent. *Id.* at *1. Therefore, a party seeking to litigate against a local child support agency must sue its parent county or its individual employees (who are employees of the county). *Id.* at *4. Here, Rasooly is suing the *state* Department of Child Support Services for its oversight of the local Contra Costa County Office, as well as Contra Costa County and two County employees of the local office. (Dkt. No. 5.)

("Superior Court") to enforce the child support order from Israel.[2] (Dkt. No. 5 ¶¶ 20, 21, 24.) The County had no jurisdiction to bring the suit, and knowingly provided erroneous facts in their complaint before the Superior Court. (Dkt. No. 5 ¶¶ 18, 19, 21, 23, 25.)

The Superior Court ordered enforcement of the Israeli child support order. (Dkt. No. 5 ¶¶ 24, 31.) Without providing Rasooly a calculation of the amount owed, from May of 2012 to January of 2013, Defendants withheld from Rasooly's income and seized from his retirement accounts over $176,000 and sent it to Israel. (Dkt. No. 5 ¶ 33, 36; Dkt. No. 5 at 28; Dkt. No. 5-1 at 4.) This amount was an overpayment of more than $100,000. (Dkt. No. 5 ¶¶ 37, 61.)

Thereafter, the Superior Court stayed any further enforcement of Rasooly's child support order. (Dkt. No. 5 ¶ 34.) Although the stay was filed on November 13, 2012, the County continued to garnish his wages through January of 2013. (Dkt. No. 5 ¶¶ 36, 37; Dkt. No. 5 at 1-2.) Despite the Superior Court's order that the State and County meet and confer with him about the accounting of his child support, both the State and County ignored his requests to do so. (Dkt. No. 5 ¶ 35, 37; Dkt. No. 5 at 30, 32-34, 36, 38-39; Dkt. No. 5-1 at 2.)

Throughout this process, Defendant Tarin, an attorney for the local Contra Costa County DCSS, harassed Rasooly, forcing him to take legal action at great additional cost. (Dkt. No. 5 ¶ 56.) During this time, Linda Dippel[3] and Defendant Self supervised Defendant Tarin. (Dkt. No. 5 ¶ 57, Dkt. No. 9-1 at 19.)

The County closed Rasooly's child support case in May of 2013 without resolving his concerns. (Dkt. No. 5 ¶ 40; Dkt. No. 5-1 at 6.) On August 13, 2013, Rasooly filed a claim against the Contra Costa County DCSS with the California Victim Compensation and Government Claims Board for $276,000. (Dkt. No. 5-2 at 9-15.) His claim was denied on September 20, 2013. (Dkt. No. 5-2 at 16.)

---

[2] The lawsuit was initially filed in Yolo County.

[3] Rasooly refers to Ms. Dippel as either Kathleen or Linda in his affirmative state tort action, but the County refers to her as Linda Dippel in their motion to dismiss. (*Compare* Dkt. No. 8 *with* Dkt No. 15.)

### III. Rasooly's Prior State Court Litigation

In February 2014, Rasooly, represented by the same counsel as represents him now, commenced an action in the Contra Costa County Superior Court ("Superior Court") against Defendants Tarin, DCSS, Contra Costa County, and Linda Dippel. (Dkt. No. 9-7 at 4.) Two months later, Rasooly filed an amended complaint making 14 claims: negligence, vicarious liability under Government Code Section 815.2(a), misrepresenting and misleading the trial court, violations of Family Code Sections 4052 and 4055, perjury, fraud, conspiracy to commit fraud, abuse of process, suppression of evidence, conversion, constructive trust accounting, tortious interference with existing contracts, and intentional infliction of emotional distress.[4] (Dkt. No. 9-1 at 3.) Rasooly's claims related to his ongoing family law case and the Superior Court proceedings to enforce the Israeli court's child support order. (*Id.* at 7-20.) The amended complaint alleged a nearly identical set of facts to those in the present case. (*Compare* Dkt. No. 9-1 *with* Dkt. No. 5).

The State filed a demurrer to Rasooly's complaint seeking dismissal on four grounds: first, that the Contra Costa Family Law Court had exclusive jurisdiction; second, that the litigation privilege of Civil Code Section 47(b)(2) barred Rasooly's claims; third, that the misrepresentation

---

[4] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: ((i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The State requests judicial notice of Exhibits A-H, all of which are documents from Rasooly's prior state court action. Exhibit A is the Summons Rasooly served to the County and his First Amended Complaint. Exhibits B-D are the County's Demurrer, Rasooly's Opposition to the Demurrer, and the County's Reply. Exhibit E is the state court's Order on the County's Demurrer and accompanying dismissal of the case with prejudice. Exhibit F is the Notice of Entry of Judgment. Finally, Exhibit G is the docket for Rasooly's state court action. Because these documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the State's request for judicial notice is granted. Fed. R. Evd. 201; (Dkt. No. 9.) The County requests judicial notice of Exhibits A-E. Exhibit A is another copy of the First Amended Complaint and Summons from Rasooly's state court action. Exhibit B is the docket from Rasooly's child custody proceedings, *Rasooly v. Rasooly*. Exhibit C is the docket from Rasooly's state court action. Exhibit D is the state court's Order sustaining the County's Demurrer. Exhibit E is the family court's findings and orders on Rasooly's child custody proceedings. These are also documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evd. 201. The County's request for judicial notice is likewise granted. (Dkt. Nos. 16-17.)

1   immunity of Government Code Section 818.8 barred Rasooly's claims; and fourth, that the
2   prosecutorial immunity provisions of Government Code Section 821.6 barred Rasooly's claims.
3   (Dkt. No. 9-2.)  The court held that Rasooly's claims were based on "statements made during trial or
4   other proceedings" and "steps taken prior thereto or afterwards" (Dkt. No. 9-5 at 2) and therefore
5   sustained the State's demurrer without leave to amend based on the litigation privilege and
6   prosecutorial immunity.  (*Id*.)

7   The County also filed a demurrer to Rasooly's complaint which the court sustained on the
8   same grounds, ruling that the litigation privilege of Civil Code Section 47(b) and the prosecutorial
9   immunity of Government Code Section 821.6 likewise barred Rasooly's claims against the County.
10  (Dkt. No. 17-4 at 3.)

11  **IV.     Present Litigation**

12  Rasooly, proceeding pro se, filed this action in October 2014—less than one week after the
13  state court's dismissal of his previous action.  (*Compare* Dkt. No. 1 *with* Dkt. No. 9-6 at 3.)  He
14  subsequently filed his First Amended Complaint which the State and County have now moved to
15  dismiss in separate motions.  (Dkt. Nos. 8-9, 15-17.)  The day before the hearing on these motions,
16  the same counsel who represented Rasooly in his state court proceedings entered a notice of
17  appearance on his behalf, and appeared and argued the motions at the February 5, 2015 hearing.
18  Because Plaintiff's pleadings were previously filed pro se, the Court granted Plaintiff leave to
19  supplement his filings.  He has since done so, and both the State and the County have responded to
20  the supplemental filings. (Dkt. Nos. 48-52.)

21  **LEGAL STANDARD**

22  Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over
23  the subject matter of the suit.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction can never be
24  forfeited or waived and federal courts have a continuing independent obligation to determine whether
25  subject-matter jurisdiction exists."  *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969,
26  976 (9th Cir. 2012) (internal quotation marks and citation omitted).  "Federal question jurisdiction
27  exists only when a federal question exists on the face of a well-pleaded complaint."  *ING Bank, FSB*
28  *v. Pineda*, 2012 WL 2077311, at *1 (N.D. Cal. June 8, 2012).  "It is well established that the plaintiff

is the 'master' of his complaint and may decide what law he will rely upon." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (internal quotation marks omitted).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating such a challenge, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). The burden of proof on a Rule 12(b)(1) motion is on a party asserting jurisdiction. *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*,

652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-Iqbal noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotations and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

The State moves to dismiss Rasooly's claims on grounds of sovereign immunity and the *Rooker-Feldman* doctrine. The County separately moves to dismiss contending that Rasooly's claims are barred by the (1) *Rooker-Feldman* doctrine, and (2) res judicata, or (3) alternatively, suggests that the Court should abstain from hearing the case pursuant to *Pullman* abstention principles.[5] For the

---

[5] Rasooly objects to the County's motion to dismiss on timeliness grounds. He contends that the motion was late under Federal Rule of Civil Procedure 15(a)(3) which provides "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). However, Rasooly never properly served the original complaint. He requested waiver of service on October 9, 2014, but no party returned the waiver. Thus, the County was entitled to the full

reasons explained below, the Court grants the State's motion with prejudice, and the County's motion with leave to amend as to one subset of claims.

### I.     The State's Motion to Dismiss

The State moves to dismiss for lack of subject matter jurisdiction, arguing that it is immune from suit under the Eleventh Amendment. The Eleventh Amendment bars suits against States and state agencies in federal courts where the State has not waived its immunity. *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1402 (N.D. Cal. 1997) *aff'd*, 237 F. 3d 1026 (9th Cir. 2001) (internal citations omitted). The State of California has not waived its immunity from Section 1983 lawsuits. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999). Therefore, plaintiffs cannot bring suit against either a State or a state agency under Section 1983. *See Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute.").

Rasooly's suggestion that his claims lie under the Fourteenth Amendment rather than Section 1983 is unavailing. (Dkt. No. 31.) There is no private right of action under the Fourteenth Amendment; constitutional tort claims for damages must be asserted under Section 1983. *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 2002), ("a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.") (internal citations omitted). Thus, because Rasooly's claims must arise under Section 1983, and the State of California has not waived its immunity from that statute, Rasooly cannot bring suit against the State of California.

To decide whether a state agency is an "arm of the state" and therefore immune from suit under the Eleventh Amendment, courts look to five factors: "whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity." *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). The court "looks to the way state law treats the entity" to complete the analysis. *Id.* Here, DCSS is clearly defined under California law as a state

---

21 days to respond to the amended complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Here, the County filed their motion on December 24, 2014—21 days after service of the amended complaint. (*Compare* Dkt. No. 35 *with* Dkt. No. 15.) The County's motion to dismiss is therefore timely.

agency. Per California Family Code Section 17303(a), California must have one centralized "state agency for child support enforcement. *See Govaerts*, 2009 WL 890881 at *2. DCSS was created to comply with federal regulations and because California lawmakers recognized that the previous system of collecting child support in California—a loose network of the State Department of Social Services and County District Attorneys' Offices—was failing to perform the central government function of collecting child support. Cal. Fam. Code §§ 17303, 17304. Moreover, because the California Family Code defines DCSS as a state agency, DCSS is subject to the claims procedure in California Government Code Sections 900-35. This means that claims against DCSS, when permitted, are paid by the Controller (*see* Cal. Gov. Code. § 900.6), and adjudicated through the state Victims' Compensation Board system. *See, e.g.*, Cal. Gov. Code §§ 905.2, 935.6. Thus, the balance of the *Mitchell* factors demonstrates that DCSS is a state agency for the purposes of the Eleventh Amendment. Sovereign immunity therefore bars Rasooly from suing DCSS.

In his supplemental briefing, Rasooly contends that DCSS cannot be considered a state agency for two reasons: (1) in its ruling against Rasooly, the California Victim's Compensation Program declared that the Contra Costa County DCSS is not a state agency, and (2) County DCSS agencies and the California Health and Human Services Agency regularly "prosecute[] and defend[] actions on [their] own behal[ves]." (Dkt. No. 48 at 2-3.) Both arguments are unpersuasive. First, the California Victim's Compensation Program denied Rasooly's claim against the *local* child support agency, the Contra Costa County DCSS, not the State DCSS. (Dkt. No. 5-2 at 9-16.) Thus, the outcome of the claim has no bearing on whether the *State* DCSS is an agency of the state. *See Govaerts*, 2009 WL 890991 at *4, *supra* note 1. Rasooly's second argument likewise fails to distinguish between the State DCSS and the County DCSS, as he relies on authority that relates to suits brought by the County, not the State. *See, e.g.*, *Kern County Dept. of Child Support Services v. Camacho*, 209 Cal. App. 4th 1028 (2012) (respondent Kern County DCSS defending its calculation of appellant's child support arrears); *San Mateo County Dept. of Child Support Services v. Clark*, 168 Cal. App. 4th 834 (2008) (San Mateo County DCSS bringing action against defendant to establish paternity and child support); *Stanislaus County Dept. of Child Support Services v. Jensen*, 112 Cal. App. 4th 453 (2003) (Stanislaus County DCSS bringing action against defendant to collect overdue

9

child support payments). Whether local child support agencies sue on behalf of themselves has no bearing on whether the *State* DCSS is a state agency—local child support agencies are distinct entities under California law. *See* Cal. Fam. Code §§ 17303, 17304.

Accordingly, because California has not waived its sovereign immunity from Section 1983 suits, and DCSS is a state agency, Rasooly may not bring suit against the State. Rasooly's Section 1983 claims against the State are therefore dismissed.[6]

## II.  The County's Motion to Dismiss

The County moves to dismiss Rasooly's claims on grounds of the *Rooker-Feldman* doctrine or res judicata, also known as claim preclusion. Alternatively, the County asks the Court to abstain from Rasooly's case under the *Pullman* abstention doctrine. Because claim preclusion bars Rasooly's claims, it is unnecessary to address the County's other arguments.

### A.  Claim Preclusion

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires a federal court to give a state court judgment the same preclusive effect as would be given that judgment under the law of the state where the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012). Rasooly's prior action took place in a California state court; California state law therefore governs the application of claim preclusion to his present claims. *See id.*

Under California law, claim preclusion prohibits a second lawsuit involving "(1) the same claim, (2) against the same party, (3) when that claim proceeded to a final judgment on the merits in a prior action." *Adam Bros. Farming v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148-49 (9th Cir. 2010) (internal citation omitted). Thus, claim preclusion bars a plaintiff from bringing a civil rights action under Section 1983 where a California state court previously rendered a valid judgment on the merits of the same claim in favor of a defendant. *See Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850–51 (9th Cir.1986) (*citing Slater v. Blackwood*, 15 Cal.3d 791, 795 (Cal.1975)).

---

[6] Because the Eleventh Amendment bars Rasooly's claims against the State, it is unnecessary to reach the State's alternative argument in favor of dismissal.

10

### 1. *The Same Claim*

Under California law, "[t]wo different causes of action are the same claim if they rise from the same invasion of a primary right." *Adam Bros. Farming*, 604 F.3d at 1149 (internal citation and quotation omitted). "If two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009). The primary right is thus defined "by the harm suffered" rather than the cause of action asserted. *Adam Bros. Farming*, 604 F.3d at 1149; *see also Slater*, 15 Cal.3d at 795.

Here, Rasooly alleges injuries nearly identical to those in his previous state court and supports those allegations with identical exhibits. (*Compare* Dkt. No. 5 *with* Dkt. No. 9.) Although Rasooly is pursuing his case under a different federal cause of action, he presents the same factual background regarding the County's method of child support enforcement and predicates his claims of due process violations on the same actions by the County. Rasooly's state and federal actions thus involve the same injury—the wrongful child support enforcement—and the same wrongs by Defendants—the allegedly improper suit, the personal harassment, the failure to comply with court orders, and so on. That Rasooly brings his claims here under a different federal theory of recovery is immaterial: because the injury to Rasooly and the wrongs by the Defendants are the same in both cases, the claims rise out of the same primary right.

### 2. *The Same Party*

California requires the parties to be identical to or in privity with the parties to prior litigation for claim preclusion to apply. *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896-97 (2002). Privity may be established by "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1069 (1998) (internal citations omitted). Privity "has also been expanded to refer to . . . a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." *Id.* at 1069-70. The focus of the

11

analysis is whether it is fair to bind the second party to the earlier action and requires close factual examination. *Id*. at 1070. California courts have held that "agents of the same government are in privity with each other, since they represent not their own rights but the right of the government." *Carmel Valley Fire Prot. Dist. v. State of California*, 190 Cal. App. 3d 521, 535 (Cal. Ct. App. 1987).

Here, the parties are nearly the same. Rasooly is the plaintiff in both the state and federal cases. (Dkt. Nos. 5, 9.) Defendants are identical in both cases, except for individual defendant Melinda R. Self. *Id.* In his state court action, Rasooly named Linda Dippel instead of Defendant Self, but both women were direct supervisors to Defendant Tarin and employees of the Contra Costa County DCSS. Here, Rasooly does not plead any specific claims against Defendant Self; rather, he sued her in her capacity Defendant Tarin's supervisor.[7] Thus, to the extent that Rasooly sues either Ms. Dippel or Defendant Self as supervisors of Defendant Tarin, and not because of their individual actions, they are identified in interest and represent the same legal rights—namely, the rights of those in their position at the Contra Costa County DCSS. *See Citizens for Open Access to Sand & Tide, Inc.*, 60 Cal. App. 4th at 1069-1070. As agents of the same County government, they are therefore in privity for the purposes of res judicata. *See Carmel Valley Fire Prot. Dist.*, 190 Cal. App. 3d at 535.

In his supplemental briefing, Rasooly contends that Defendant Self "took new actions rising to the level of bad acts and violations." (Dkt. No. 48 at 6.) The FAC, as currently pled, does not include allegations to support this claim. However, if Rasooly could allege specific actions by Defendant Self apart from merely her role as Defendant Tarin's supervisor, he might be able to overcome issues of privity, and therefore res judicata, with respect to Defendant Self (he would still have to plead an actionable claim against Self).

### 3. *Final Judgment on the Merits*

The state court granted Defendants' demurrers, and concluded that the state litigation privilege and prosecutorial immunity barred all of Rasooly's claims.

In California, a state court's order sustaining a general demurrer constitutes a final judgment on the merits. *See McKinney v. Cnty. of Santa Clara*, 110 Cal.App.3d 787, 794 (1980) (holding "[a]

---

[7] This is the same basis on which he sued Ms. Dippel in the prior state court action. (*See* Dkt. No. 9-1.)

12

judgment on a general demurrer will have a preclusive effect on a new action in which the complaint states the same facts which were held not to constitute a cause of action on the former demurrer"); *see also Goddard v. Sec. Title Ins. & Guarantee Co.*, 14 Cal.2d 47, 52 (1939) ("A judgment given after the sustaining of a general demurrer on a ground of substance, for example, that an absolute defense is disclosed by the allegations of the complaint, may be deemed a judgment on the merits").  While a demurrer based on technical or procedural grounds will not bar future actions, "if the pleading defects cannot be corrected or cured in a new pleading, then the prior judgment may have res judicata effect." *Sangster v. San Bernadino Cnty. Sheriff Dep't*, No. 12-02007, 2013 WL 2121917, at *4 (C.D. Cal. Apr. 16, 2013).

The prosecutorial immunity of Government Code Section 821.6 is broadly applied to any actions taken by a public employee in California while "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  The immunity applies "even if he acts maliciously and without probable cause."  Govt. Code § 821.6; *see also Richardson-Tunnell v. School Insurance Program for Employees*, 157 Cal.App.4th 1056, 1062 (2007).  The purpose of the statute is "to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits."  *Gressett v. Contra Costa Cnty.*, No. 12-3798, 2013 WL 2156278, at *29 (N.D. Cal. May 17, 2013) (internal citation and quotation omitted).

At least one court has held that a demurrer granted on the basis of California prosecutorial immunity under Government Code Section 821.6 operates as res judicata in subsequent suits.  *See Pagtakhan v. Alexander*, 999 F.Supp.2d 1151, 1159 (N.D. Cal. 2013).  In *Pagtakhan*, the plaintiff's state court claims against the San Mateo County District Attorney's Office, which included both federal and state tort claims, were dismissed with "leave to amend to allege any facts that might give rise to an exception from the statutory [prosecutorial] immunity," but the plaintiff failed to amend his complaint.  *Id.* at 1156.  Thus, the federal court in the plaintiff's subsequent action held that there "ha[d] been a final judgment on plaintiff's state action" because plaintiff's "federal claims ... allege[d] the same factual background, and contain[ed] the same causes of action" under the California primary rights theory, and were previously dismissed per Government Code Section 821.6. *Id.* at 1159.

The litigation privilege under California Code of Civil Procedure Section 47(b) is also broadly applied. The privilege applies to communications made by a litigant in connection with a judicial proceeding to achieve the object of litigation. *See, e.g., Oei v. N. Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1099 (C.D. Cal. 2006). The privilege applies to any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or other participants authorized by law, (3) to achieve the objects of litigation, (4) and which has some connection or logical relation to the action. *See Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). Its "principal purpose is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 830–31 (2003). This privilege is "absolute, not qualified." *Visto Corp. v. Sproqit Technologies, Inc.*, 360 F.Supp.2d 1064, 1068 (N.D. Cal. 2005).

Thus, the purpose of both statutes is not to bar complaints for technical reasons; rather, both California Code of Civil Procedure Section 47(b) and Government Code Section 821.6 were created to prevent claims contrary to public policy from being litigated at all.

The Superior Court ruled in Rasooly's initial action that these statutes barred all of his claims. (Dkt. No. 17 at Ex. D.) There is no question that the Superior Court was an appropriate venue for Rasooly's case, nor did issues of jurisdiction or timing arise regarding his claims. Instead, the court held that because of the statutory privilege and immunity afforded to the County under California law, Rasooly's claims were barred. Although the truth of his allegations were not resolved, the demurrer sustained on behalf of the County established that Rasooly did not have a proper cause of action in the Superior Court. Therefore, as in *Pagtakhan*, the demurrer should be treated as a final judgment on the merits for the purposes of res judicata. *See* 999 F.Supp.2d at 1159.

Rasooly nonetheless contends that because the litigation privilege does not apply to Section 1983 actions, the state court judgment was not a ruling on the merits for the purpose of applying claim preclusion here. (Dkt. No. 48 at 4.) But the relevant question is not whether the litigation privilege applies to the instant case; it is whether the dismissal of Rasooly's state court case constituted a final judgment on the merits. *Cf. Hutchison v. California Prison Indus. Auth.*, No. 13-CV-04635, 2015 WL 179790, at *5 (N.D. Cal. Jan. 14, 2015) (rejecting plaintiff's argument that res

judicata did not apply because California's Worker's Compensation statutes did not preempt plaintiff's federal claims as it did his state claims). Accordingly, because the litigation privilege could apply to his state court claims, and the state court held that it did, and such dismissal was substantive rather than technical, the dismissal of his case constitutes a final judgment on the merits. Further, Rasooly fails to address the state court's ruling that prosecutorial immunity also barred his claims; thus, even if the Court were persuaded by his arguments regarding the litigation privilege, the dismissal of his state action based on prosecutorial immunity would still constitute a final judgment on the merits.

### 4. *Res Judicata Bars Plaintiff's Claims*

The Complaint in this action alleges virtually the same misconduct described in Rasooly's tort action in Superior Court; therefore, Rasooly's claims arise out of the same primary right as the earlier case. The privity requirement is met because the parties, as pled, are identical to the parties in the previous action. Finally, in the previous action, the state court entered a final judgment on the merits of Rasooly's claims. Therefore, res judicata bars all of Rasooly's claims against the County in the present suit and the County's motion to dismiss must be granted. Rasooly will be granted leave to amend his claim as to Defendant Self to the extent that he can in good faith allege that she took independent acts that deprived Rasooly of due process. The dismissal is otherwise with prejudice as amendment of his claims with respect to the other Defendants would be futile. *See Aquino v. California Reconveyance Co.*, No. 14-CV-01818, 2014 WL 5494446, at *5 (N.D. Cal. Oct. 30, 2014) (holding that amendment would be futile where res judicata barred plaintiff's claims).

## CONCLUSION

For the reasons explained above, the Court GRANTS the State's motion to dismiss on sovereign immunity grounds. Because sovereign immunity invokes a lack of subject matter jurisdiction, the Court grants the motion without leave to amend. Additionally, the Court GRANTS the County's motion to dismiss based on res judicata. This dismissal is with prejudice except as to Defendant Self as set forth above. If Plaintiff elects to amend his complaint as to his allegations against Defendant Self, he must do so in 21 days.

This order disposes of Docket Nos. 8, 15.

**IT IS SO ORDERED.**

Dated: March 17, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE